IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

STATE OF MISSISSIPPI *ex rel.*
JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI,

        Plaintiff,

v.

                              CASE NO. 3:19-cv-353-HTW-LRA

CREDIT ACCEPTANCE CORPORATION

        Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF
## STATE OF MISSISSIPPI'S MOTION TO REMAND AND FOR COSTS AND FEES

The State of Mississippi through its Attorney General, Jim Hood ("State"), brought this state-law enforcement action in state court to punish, stop, and deter violations of the Mississippi Consumer Protection Act ("MCPA"), Miss. Code Ann. §§ 75-24-1 to 75-24-29, by Defendant Credit Acceptance Corporation ("Credit Acceptance"). The State's complaint asserts only state-law claims under the MCPA; it asserts no federal-law cause of action. In Credit Acceptance's quarterly report filed with the Securities and Exchange Commission on April 29, 2019, Credit Acceptance demonstrated that it understood precisely the State's state-law complaint:

> The Attorney General of the State of Mississippi, on behalf of the State of Mississippi, filed a complaint in the Chancery Court of the First Judicial District of Hinds County, Mississippi, alleging that the Company engaged in unfair and deceptive trade practices in subprime auto lending, loan servicing, vehicle repossession and debt collection in the State of Mississippi in violation of the Mississippi Consumer Protection Act.

Credit Acceptance Corp. (Form 10-Q), at 38 (April 29, 2019), available at https://www.sec.gov/Archives/edgar/data/885550/000088555019000034/cacc-20190331x10q2.htm. Credit Acceptance did not, under penalty of violating federal securities

law, claim, as it does here, that the State's complaint only "nominally" alleges state law claims. Notice of Removal at 2, ECF No. 1 ("Removal").

The State challenges, among other things, Credit Acceptance's unfair and deceptive lending practices of imposing gross markups on the sale price of vehicles and ancillary products for Mississippi consumers with poor credit, resulting in unaffordable loans and default. *See* Compl. ¶¶ 1-9, 16-20, 29-52.  Unbeknown to consumers, Credit Acceptance tiers the markup on the sale price of vehicles so that consumers with the poorest credit profiles receive the cheapest, lowest quality cars and pay the highest markups over the cash price or the fair market value. *See* Compl. ¶ 30, 54.

On top of that, Credit Acceptance tacks on expensive ancillary products – described as "crap" by a Credit Acceptance former employee and "BS" by a Credit Acceptance car dealer – to further prey on Mississippi subprime consumers and increase the unaffordability of the loan. *See* Compl. ¶¶ 39-52.  Then, it charges high interest rates frequently at or near the maximum finance charge allowed under Mississippi law – which is supposed to offset the credit risk presented by poorer credit borrowers, not the sale price of cars or overpriced, largely valueless ancillary products. *See* Compl. ¶¶ 53-56.  These lending practices, among others, the State alleges, collectively and separately, misrepresent, fail to disclose, and obscure material information, and render loans unaffordable, resulting in default, and are, thus, unfair and deceptive under the MCPA. *See* Compl. ¶¶ 86, 92.

Credit Acceptance argues that the Truth and Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq*. and its implementing regulation, Regulation Z, 12 C.F.R. part 1026 – which Credit Acceptance alleges do not include markups on cars or ancillary products as finance charges – conflicts with Mississippi state law and preempts conflicting Mississippi state law. *See* Removal

at 4-7. Credit Acceptance's underlying premise is wrong. Gross markups on cars and ancillary products can be finance charges under TILA, and Credit Acceptance's practice of concealing that it systematically increases markups over fair market value as consumers' credit ratings decrease may very well be actionable violations of TILA, Regulation Z, or other federal laws.

But that is not the State's case: The State's well-pleaded complaint asserts only state-law causes of action. Credit Acceptance's defense of preemption by TILA and Regulation Z, however wrong, does not and cannot give rise to federal jurisdiction, this Court in *Mississippi ex rel. Hood v. Global Client Solutions* made clear. No. 3:18-cv-280-HTW-LRA, 2019 U.S. Dist. LEXIS 73900, at *10 (S.D. Miss. Mar. 28, 2019) (Wingate, J.) ("federal defense does not give rise to federal subject matter jurisdiction"); *see also Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998) ("a defense is not part of a plaintiff's properly pleaded statement of his or her claims").

However, the main goal of Credit Acceptance is not to establish federal jurisdiction. As demonstrated by its willingness to flout well-established U.S. Supreme Court law and a decision by this Court squarely addressing and refuting its arguments only weeks before removal, Credit Acceptance seeks one thing: delay of the State's prosecution of its case. Credit Acceptance cannot be permitted to abuse the federal removal process or the federal judiciary's time and resources in this manner, and its frivolous removal should be denied and sanctions imposed.

## PROCEDURAL HISTORY

On April 23, 2019, the State brought an enforcement action in the public interest pursuant to the Attorney General's statutory and *parens patriae* authority against Credit Acceptance in the Chancery Court of Hinds County, Mississippi.[1] The complaint specifically – and solely – alleges

---

[1] The State filed a redacted copy of the complaint in state court because it contains certain information designated by Credit Acceptance in the State's investigation as confidential. Should

3

two claims for relief under state law: (1) Credit Acceptance engaged in deceptive trade practices and misrepresented and concealed, among other things, the characteristics, standard, and/or quality of its subprime auto lending services, and associated servicing and collection of its loans under the MCPA, Compl. ¶¶ 82-87; and (2) Credit Acceptance engaged in unfair trade practices relating to subprime auto lending services and associated servicing and collection of its loans under the MCPA, Compl. ¶¶ 88-94.  The State brought only state-law claims under the MCPA to remedy and enjoin these unlawful practices.  The complaint asserts no federal-law claim.

On May 21, 2019, Credit Acceptance removed the instant matter to this Court, asserting federal-question jurisdiction under 28 U.S.C. § 1331.  Removal at 1.  Credit Acceptance filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted on May 24, 2019.  Mot. to Dismiss, ECF No. 10 at 1.  The State asked Credit Acceptance to agree to stay briefing on its Motion to Dismiss the Complaint pending the resolution of this Motion to Remand.  Credit Acceptance refused to agree to the stay even though there is no question federal courts must resolve questions of jurisdiction before proceeding to the merits.  Further, the local rules specify that "discovery motions, discovery appeals, immunity defense motions, motions to remand, and other jurisdictional motions" will be given priority over other types of motions.  L.U.Civ.R. 7(b)(7).

## LEGAL STANDARD

This Court recently explained: "Federal courts are courts of limited jurisdiction . . . . Federal courts must presume that a lawsuit lies outside of their limited jurisdiction.  The party asserting federal subject matter jurisdiction bears the burden of establishing such."  *Global Client*, 2019 U.S. Dist. LEXIS 73900, at *7-9.  This Court continued: "The parties, by their

---

the Court wish to review an unredacted version of the complaint, the State will provide a copy for *in camera* review by the Court.

actions or inactions, cannot convey bogus jurisdiction on the court." *Id.* at 9. "Further, '[a]ny ambiguities are construed against removal and in favor of remand to state court.'" *Id.* (citing *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 84 (5th Cir. 2013)).

This Court further explained that "[r]emoval from state courts to federal courts is particularly disfavored where, as here, a state files it complaint within its own court system." *Id.* (citing *JP Morgan Chase*, 737 F.3d at 89). "[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Id.* (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983)).

This Court continued, citing long-established Supreme Court jurisprudence: "'[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Id.* at *10 (citing *Rivet*, 522 U.S. at 475 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987))). "Under the well-pleaded complaint rule, the plaintiff is the master of the claim, who may avoid federal jurisdiction by relying exclusively on state law." *Id.* (citing *Caterpillar*, 482 U.S. at 392). "The existence of a possible or even an inevitable federal defense does not give rise to federal subject matter jurisdiction." *Id.* (citing *Rivet*, 522 U.S. at 475).

**ARGUMENT**

I. **CREDIT ACCEPTANCE HAS FAILED TO MEET ITS HEAVY BURDEN TO ESTABLISH FEDERAL JURISDICTION OVER THIS CASE BROUGHT BY THE STATE**

Credit Acceptance's removal flies in the face of this Court's decision in *Global Client*, issued less than two months before Credit Acceptance's removal and which Credit Acceptance

barely mentions, much less distinguishes. Credit Acceptance argues that the State's allegations that Credit Acceptance's grossly inflated sale prices for its cars and ancillary products are effectively hidden finance charges, "present[] a clear conflict" with TILA and Regulation Z and are "preempted." Removal at 5, 6, 9-10. Credit Acceptance also argues the State's claims "implicate Section 5(a)(1) of the [FTC] Act, 15 U.S.C. § 45(a)(1), which is incorporated in the interpretive section of the MCPA . . . ." *Id.* at 4. These arguments for federal jurisdiction were soundly rejected by *Global Client*, 2019 U.S. Dist. LEXIS 73900, at \*19-20.

### A. It Is Well-Established that Credit Acceptance's Defense of Preemption Does Not Give Rise to Federal Issue

Credit Acceptance invokes preemption in its improper attempt to argue federal jurisdiction on alleged embedded federal issues under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). "The Supreme Court has cautioned that suitable cases appropriately removable under *Grable* constitute a 'slim category'." *Global Client*, 2019 U.S. Dist. LEXIS 73900, at \*21 (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)). *Grable* requires that a "federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Under *Grable*, this Court held, "the necessary, substantial, and disputed federal issue must be inherent in the State's complaint, not a defense to the complaint." *Global Client*, 2019 U.S. Dist. LEXIS 73900, at \*21 (citing *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 942-943 (5th Cir. 2013)). "[E]ven if precepts embedded in the [federal law] would provide a defense here to defendants against the plaintiff's claims, that defense still would not recharacterize plaintiff's lawsuit as 'federal'." *Id*. at 21-22. "[T]he existence of a possible or

even inevitable federal defense does not give rise to federal subject matter jurisdiction." *Id*. at 22 (citing *Rivet*, 522 U.S. at 475).

Here, there are no federal issues within the four corners of the State's complaint. Credit Acceptance, nevertheless, tries unsuccessfully to create a federal issue by arguing the State's allegations that sale price markups and overpriced ancillary products constitute undisclosed finance charges conflict with TILA. Removal at 4-7. Credit Acceptance relies on a preemption provision in Regulation Z. Removal at 5-6. The comment to Regulation Z, on which Credit Acceptance relies, states that a portion of Mississippi's state motor vehicle law, among several other similar statutes in other states, is "preempted in those cases in which the term finance charge would be used under state law to describe a different amount than the finance charge disclosed under Federal law." 12 C.F.R. part 1026, Supp. I, ¶ 28(a), cmt. 11(i). Even if a portion of Mississippi's state motor vehicle law were preempted due to a conflict with TILA, that would – at best – possibly establish a defense, not form a basis for removal. *See, e.g.*, *Franchise Tax Bd.*, 463 U.S. at 14 ("since 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case"); *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (defensive preemption (i.e. "conflict preemption" or "ordinary preemption") does not create federal jurisdiction).[2]

---

[2] Credit Acceptance nonsensically argues that its preemption argument is not "sought solely as a defense" because TILA "necessarily precludes any contrary interpretation of the statute" as it alleges is made on the face of the State's complaint. Removal at 10. It is unclear how that is anything but a preemption argument, which can only be a defense.

7

Because there are no federal issues inherent in the State's complaint, the Court does not need to engage in any further analysis under *Grable*. But it is worth noting there is no conflict. Credit Acceptance does not identify or explain how the definition of a finance charge in Mississippi's motor vehicle law conflicts with TILA. It is an incorrect argument to convey bogus jurisdiction. Under both Regulation Z and Mississippi's motor vehicle law, charges not charged in a comparable cash transaction are considered a finance charge. *Compare* 12 C.F.R. § 1026.4(a) ("The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction) *with* Mississippi Motor Vehicle Sales Finance Law, Miss. Code Ann. § 63-19-3(j) ("'Finance charge' means the amount agreed upon between the buyer and the seller, as limited in this chapter, to be added to the aggregate of the cash sale price, the amount, if any, included for insurance and other benefits and official fees, in determining the time price").

The comment to Regulation Z, on which Credit Acceptance relies to argue preemption, is clear that state law is preempted *only* if it "requires use of the term finance charge, but defines the term to include fees that the Federal law *excludes* . . . ." 12 C.F.R. part 1026, Supp. I, ¶ 28(a), cmt. 11(i) (emphasis added). Charges "excluded" from the finance charge in Regulation Z is a finite list of specific exclusions, which Credit Acceptance never points to, and does not contain sale price markups or ancillary products. *See* 12 C.F.R. 1026.4(c). Instead, Credit Acceptance deliberately misleads by claiming that charges are preempted if TILA and Regulation Z do not "include" those charges as finance charges. Removal at 6. Even if this were an accurate recitation of the law, which it is not, Credit Acceptance's argument is still wrong

given that Regulation Z lists "[e]xamples" of finance charges, which are not intended to be exhaustive or impose any limitations. 12 C.F.R. § 1026.4(b).

Credit Acceptance's cases also fail to support a conflict under TILA. Removal at 6. For example, the Fifth Circuit case cited by Credit Acceptance states that "[t]he language of both [TILA and the state law statute at issue] is broad enough to include a service agreement or membership fee imposed as a condition before credit is extended." *Berryhill v. Rich Plan of Pensacola*, 578 F.2d 1092, 1098 (5th Cir. 1978) (cited at Removal at 6). Likewise, here, the well-pleaded complaint alleges that Credit Acceptance adds overpriced, largely valueless ancillary products in a predatory fashion. *See, e.g.*, Compl. ¶ 40 (Credit Acceptance "creates an opportunity where consumers could be (and some have complained they are) charged for ancillary products they did not want").[3] Credit Acceptance fails to cite any case saying gross markups on the sale price of cars cannot be a finance charge, and fails to cite to the Court the many cases saying markups on ancillary products and cars can be finance charges under TILA. *See, e.g.*, *Gibson v Bob Watson Chevrolet-Geo, Inc*., 112 F.3d 283, 286-287 (7th Cir. 1997) (undisclosed finance charge under TILA can exist when dealers charge markups for ancillary products that are "*systematically* higher on sales to credit customers than on sales to cash customers"); *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 932 (7th Cir. 1998) (higher price of vehicles charged to credit buyer is hidden finance charge under TILA); *Limtiaco v. Auction*

---

[3] Even if there were a potential conflict relating to ancillary products in some circumstances, it would not be a "substantial" question under *Grable*. Issues that are "fact-bound and situation-specific" do not give rise to a substantial question. *Empire Healthchoice*, 547 U.S. at 700-701. A substantial question needs to involve a "nearly 'pure issue of law'." *Id.*; *see also Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008) (not substantial when "federal issue is predominantly one of fact").

*Cars.com, LLC*, No. 2:11-cv-00370-MMD-CWH, 2012 WL 4911726, at *3 (D. Nev. 2012) ("A 'hidden' finance charge may exist where the price charged is above true market value.").

      **B.**      **Borrowing of Federal Law Does Not Give Rise to Federal Jurisdiction**

While the State does not rely on claims under TILA or the FTC Act, the MCPA does look to the FTC Act and other consumer protection law standards, including potentially standards from TILA, for guidance. *See* Miss. Code Ann. § 75-24-3(c). But this, as instructed by this Court in *Global Client*, does not give rise to federal jurisdiction: "Defendants seek to make much of the Mississippi Consumer Protection Act's reliance on federal law. This borrowing of federal law does not convert a properly pleaded state-created claim into a federal claim." *See Global Client*, 2019 U.S. Dist. LEXIS 73900, at *20 (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12 (2003); *Merrill Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 (1986); and *Bally v. Nat'l Collegiate Athletic Ass'n*, 707 F. Supp. 57, 60 (D. Mass. 1988)).[4]

---

[4] Credit Acceptance's argument that federal jurisdiction will not disturb the federal-state balance because the MCPA relies on or can look to for guidance the FTC Act, TILA, or other federal consumer protection standards, would turn on its head the long-established edict that "considerations of comity make federal courts reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Global Client*, 2019 U.S. Dist. LEXIS 73900, at *9 (citing *Franchise Tax Bd.*, 463 U.S. at 21 n.22). This reluctance is even further reinforced in this case because "consumer protection [is] an area traditionally reserved to the states," *Teltech Sys. v. Bryant*, 702 F.3d 232, 236 (5th Cir. 2012), and asserting federal jurisdiction over state consumer claims would result in the "usurpation of state authority in an area in which states have traditionally been dominant," *Singh*, 538 F.3d at 340. Mississippi courts have routinely found no federal jurisdiction under cases brought by the Mississippi Attorney General under the MCPA. *See, e.g.*, *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 81-82 (5th Cir. 2013); *Miss. ex rel. Hood v. Trans Union, LLC*, No. 1:15-cv-161-HSO-JCG, at 1-4 (S.D. Miss. Oct. 5, 2015); *Hood v. AstraZeneca Pharm., LP*, 744 F. Supp. 2d 590, 594, 607 (N.D. Miss. 2010).

### C. There Is No Complete Preemption under TILA or Regulation Z

Though Credit Acceptance does not come out and expressly argue "complete preemption" – presumably because even it recognizes how absurd that argument would be here – it nonetheless makes complete preemption arguments. Credit Acceptance claims, without explanation, that this Court's recent decision remanding *Global Client* is "readily distinguishable" as the court found that the federal laws "do not afford any preemption." Removal at 9-10. In *Global Client*, this Court found no complete preemption; thus, for it to be distinguishable, Credit Acceptance would have to prove complete preemption here. *See Global Client*, 2019 U.S. Dist. LEXIS 73900, at *17-20.

This argument is even more "patently unreasonable" than this Court deemed the argument in *Global Client* because it follows on the heels of *Global Client* and not only fails to distinguish it, but flies in its face. *See Global Client*, 2019 U.S. Dist. LEXIS 73900, at *23. In *Global Client*, this Court explained complete preemption: "'When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Id*. at 18 (citation omitted). This Court said there are only four areas where the Supreme Court has found the complete preemption doctrine applies. *Id*. And there are limited, additional areas where lower courts have applied it. *Id*. at 18-19. None apply here.

Courts, including this Court, have routinely said there is no complete preemption under TILA. *See, e.g.*, *Wells Fargo Bank W., Nat'l Ass'n. v. Burns*, 100 Fed. App'x 599, at *1 (8th Cir. 2004)*; Walker v. Atwood Chevrolet-Olds, Inc.*, 189 F. Supp. 2d 594, 598 (S.D. Miss. 2001) (Wingate, J.); *Greer v. MAJR Fin. Corp.*, 105 F. Supp. 2d 583, 589-591 (S.D. Miss. 2000); *Evans v. Courtesy Chevrolet II, LP*, 423 F. Supp. 2d 669, 672 (S.D. Tex. 2006). The plain

language of Regulation Z and the comment relied on by Credit Acceptance expressly permit state-law claims that are not inconsistent with its requirements. *See, e.g.*, 12 C.F.R. § 1026.28; 12 C.F.R. part 1026, Supp. I, ¶ 28(a), cmt. 11(i); *Greer*, 105 F. Supp. 2d at 589-591 (establishing complete preemption requires defendant to "demonstrate that Congress intended not just to preempt a state law to some degree, but to altogether substitute a federal cause of action for a state cause of action.").[5]

## II. CREDIT ACCEPTANCE'S REMOVAL IS FRIVOLOUS AND INTENDED TO DELAY AND THE STATE IS ENTITLED TO AN AWARD OF FEES AND COSTS

Credit Acceptance's removal is frivolous and attorneys' fees and costs should be awarded. *See* 28 U.S.C. § 1447(c). Credit Acceptance raises only arguments that it knows were recently and squarely addressed and rejected by this Court in *Global Client*, including that a defense (here, preemption) or borrowing of federal law can give rise to federal jurisdiction. *See Global Client*, 2019 U.S. Dist. LEXIS 73900, at *15, 14. Moreover, Credit Acceptance sneakily tries to distinguish *Global Client* by claiming that this Court "found both that the [Telemarketing Sales Rule] and FTC Act do not afford any preemption," Removal at 10-11, when what *Global Client* found was no *complete* preemption, which Credit Acceptance does not (and cannot) seriously argue here. Further, Credit Acceptance's entire TILA/Regulation Z argument is premised on an implausible underlying argument that TILA/Regulation Z conflict with the

---

[5] Credit Acceptance argues that this Court has found removal proper based on a TILA federal question in one case, *Gandy v. Peoples Bank & Trust Co.*, 224 B.R. 340 (S.D. Miss. 1998). Removal at 7. As this Court explained, in *Gandy*, "the plaintiff had stated no state law cause of action" and thus the court "was confronted with nothing but construction and application of TILA to the facts of the case." *Easterling v. Gulf Guar. Ins. Co.*, 60 F. Supp. 2d 586, 588 (S.D. Miss. 1999) ("the artful pleading exception to the well pleaded complaint rule does not apply where a plaintiff has stated viable state causes of action"); *see also Walker*, 189 F. Supp. 2d at 599 (Wingate, J.) ("if a plaintiff indeed has a viable state claim, he may depend on it alone and thereby defeats attempts at removal").

12

State's allegations that gross markups on cars and ancillary products are hidden finance charges. Even a passing reference to TILA/Regulation Z shows that such markups are not excluded finance charges and are not preempted. In these circumstances, there is reason to be sufficiently "perturbed" to award attorneys' fees, *compare Global Client*, 2019 U.S. Dist. LEXIS 73900, at *23-24, so that Credit Acceptance cannot just flout this Court's teachings with no consequence.

The Court should also exercise its discretion to award fees and costs here because Credit Acceptance is making unreasonable arguments for purposes of delay. Credit Acceptance's removal delayed pending discovery, which Credit Acceptance would have been required to answer earlier this month under Rules 33(b)(3) and 34(b) of the Mississippi Rules of Civil Procedure. *See* ECF No. 1-2 at 103, 106. Also, Credit Acceptance is seeking to waste judicial and plaintiff's resources, especially in light of how unreasonable and improper removal is, by refusing to stay the briefing on its motion to dismiss. Credit Acceptance has also requested oral argument on its removal further to delay prosecution of the State's case (while wasting more of the Court's time and resources) until the inevitable return to state court, where it will be held to account for its violations of state law. Credit Acceptance's bad faith in removing the State's consumer protection case, while not a prerequisite to a fee award, calls out loudly for sanctions.

## CONCLUSION

For the foregoing reasons, the State respectfully requests that this Court remand this case to the state court and award the State attorneys' fees and costs.

Dated: June 20, 2019                                  Respectfully submitted,

**PLAINTIFF, STATE OF MISSISSIPPI** *ex rel.*
**JIM HOOD, ATTORNEY GENERAL OF THE**
**STATE OF MISSISSIPPI**

By:   */s/ Mimi Liu*
        Mimi Liu (admitted *pro hac vice*)

Jacqueline H. Ray MSB#100169)
Mary Jo Woods (MSB#10468)
Donald L. Kilgore (MSB#3758)
Special Assistant Attorneys General
Office of the Mississippi Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: 601.359.3680
Facsimile: 601.359.2003
Email: jacra@ago.state.ms.us,
　　　mwood@ago.state.ms.us
　　　dkilg@ago.state.ms.us

OF COUNSEL:

Mimi Liu (admitted *pro hac vice*)
Elizabeth Paige Boggs (admitted *pro hac vice*)
MOTLEY RICE LLC
401 9th Street NW, Suite 1001
Washington, D.C. 20004
Telephone: (202) 386-9625
Facsimile: (202) 386-9622
Email: mliu@motleyrice.com
　　　pboggs@motleyrice.com

Blake A. Tyler (MSB#101786)
Jason M. Kirschberg (MSB#104860)
GADOW TYLER PLLC
511 East Pearl Street
Jackson, Mississippi 39201
Telephone: (601) 355-0654
Facsimile: (601) 510-9667
Email: blake@gadowtyler.com
　　　jason@gadowtyler.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 20, 2019, I electronically filed the foregoing Memorandum of Law in Support of the State of Mississippi's Motion to Remand and for Costs and Fees using the ECF.

Dated:  June 20, 2019

                */s/ Mimi Liu*
                Mimi Liu (admitted *pro hac vice*)