**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**STATE OF MISSISSIPPI** *ex rel.*
**JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI**                                                         **PLAINTIFF**

  **CIVIL ACTION NO. 3:19cv353-HTW-LRA**

**VS.**

  **ORAL ARGUMENT REQUESTED
  PURSUANT TO L.U. Civ. R. 7(b)(6)**

**CREDIT ACCEPTANCE
CORPORATION**                                                                                   **DEFENDANT**

---

**CREDIT ACCEPTANCE CORPORATION'S REPLY
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

---

| | |
|---|---|
| **BRUNINI, GRANTHAM,**<br>  **GROWER & HEWES, PLLC** | **SKADDEN, ARPS, SLATE,**<br>  **MEAGHER & FLOM LLP** |
| R. David Kaufman (MS Bar No. 3526)<br>M. Patrick McDowell (MS Bar No. 9746)<br>Cody C. Bailey (MS Bar No. 103718)<br>The Pinnacle Building, Suite 100<br>190 East Capitol Street (39201)<br>Post Office Drawer 119<br>Jackson, MS 39205<br>Telephone: (601) 948-3101<br>Facsimile: (601) 960-6902 | Jonathan Frank (*pro hac vice*)<br>Patrick G. Rideout (*pro hac vice*)<br>Four Times Square<br>New York, NY 10036<br>Telephone: (212) 735-3000<br>Facsimile: (212) 735-2000<br><br>Anand S. Raman (*pro hac vice*)<br>Darren M. Welch (*pro hac vice*)<br>1440 New York Avenue, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 371-7000<br>Facsimile: (202) 393-5760<br><br>*Counsel for Defendant*<br>*Credit Acceptance Corporation* |

03402258

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ................................................................................................................................2

I. THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE MCPA CLAIM ......................2

    A. The Complaint's Disclosure-Based Claims Must Fail..............................................3

    B. Credit Acceptance Cannot Be Held
       Vicariously Liable for Alleged Dealer Conduct .......................................................5

    C. The MCPA Cannot Be Used to
       Second-Guess Informed Consumer Choices ............................................................6

    D. The Complaint Does Not Plead Violations of Other Laws......................................9

II. THE REQUESTED INJUNCTION IS IMPROPER ..........................................................10

CONCLUSION ...........................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Allstate Life Insurance Co. v. Parnell*,
    292 F. App'x 264 (5th Cir. 2008) ..................................................................................5, 7

*Anderson v. General Motors Acceptance Corp.*,
    476 F. Supp. 2d 624 (N.D. Miss. 2007), *aff'd*, 269 F. App'x 4452 (5th Cir. 2008)........4, 7

*Berryhill v. Rich Plan of Pensacola*,
    578 F.2d 1092 (5th Cir. 1098) .............................................................................................9

*Byrd v. Paw Paw's Camper City, Inc.*,
    967 So. 2d 1251 (Miss. Ct. App. 2007) ..............................................................................5

*Carvelli v. Ocwen Financial Corp.*,
    __ F.3d __, 2019 WL 3819305 (11th Cir. Aug. 15, 2019) .................................................8

*In re Cliffdale Associates Inc.*,
    103 F.T.C. 110, 1984 WL 5653119 (1984) .......................................................................5

*Copeland v. Axion Mortgage Group LLC*,
    No. 1:16cv159-HSO-JCG, 2016 WL 4250431 (S.D. Miss. Aug. 11, 2016) .......................1

*Davis v. General Motors Acceptance Corp.*,
    406 F. Supp. 2d 698 (N.D. Miss. 2005)..............................................................................4

*Holman v. Howard Wilson Chrysler Jeep, Inc.*,
    972 So. 2d 564 (Miss. 2008)...............................................................................................5

*Humphrey v. Citibank NA*,
    No. 2:12cv148M-V, 2013 WL 5407195 (N.D. Miss. Sept. 25, 2013) ................................3

*Jeter v. Credit Bureau, Inc.*,
    760 F.2d 1168 (11th Cir. 1985) ..........................................................................................6

*Rawls v. Friedman's Inc.*,
    No. 4:02cv510LN, 2003 WL 21728838 (S.D. Miss. June 27, 2003) .................................4

*Richardson v. Allstate Indemnity Co.*,
    Civ. No. 07-5066, 2009 WL 10680780 (E.D. La. Apr. 3, 2009).........................................8

*Rooster's Grill, Inc. v. Peoples Bank*,
    965 F. Supp. 2d 770 (S.D. Miss. 2013)...............................................................................8

*Tanner v. Pfizer, Inc.*,
    No. 1:15cv75-HSO-JCG, 2015 WL 6133207 (S.D. Miss. Oct. 19, 2015) ......................6, 9

*Trans World Accounts, Inc. v. FTC*,
    594 F.2d 212 (9th Cir. 1979) ..................................................................................6

*United Credit Corp. v. Hubbard*,
    905 So. 2d 1176 (Miss. 2004) ..................................................................................8

*Young v. Bristol-Myers Squibb Co.*,
    No. 4:16cv00108-DMB-JMV, 2017 WL 706320 (N.D. Miss. Feb. 22, 2017) ....................3

## STATUTES

Mass. Gen. Laws 93A § 2 ....................................................................................................3

Miss. Stat. Ann. § 75-24-5 ...................................................................................................3

## **PRELIMINARY STATEMENT**

As established in Credit Acceptance's Opening Brief,[1] the Complaint improperly seeks to hold the Company liable for its lawful financing and collections practices because the Attorney General disagrees with certain public policy decisions that are reflected in the comprehensive regulatory scheme that governs indirect auto finance.  The Opposition confirms this, and all but concedes that the Complaint does not allege a violation of any of the numerous statutes and regulations that govern each and every facet of the Company's business.  Instead, purporting to apply the "four corners of the law," the Opposition advances a theory whereby Credit Acceptance, an indirect finance company that accepts assignment of Contracts once they are entered into between the Dealer and its customers, can be held liable under the MCPA for the quality of the cars Dealers sell, the price at which those cars are sold, and the (concededly lawful) interest rate charged for financing those transactions.  This fails as a matter of law.

In an effort to mask the Complaint's deficiencies, the Opposition recites a repetitive and conclusory list, copied and pasted from the Complaint, of forty-three purportedly unfair and deceptive trade practices.  (*See* Compl. ¶¶ 86, 92; Opp. 2-6.)  But this tactic only highlights the "shotgun" nature of the Complaint, where "a little bit of everything" is "heedlessly throw[n]" together "in the hopes that something will stick."  *Copeland v. Axion Mortg. Grp. LLC*, No. 1:16cv159-HSO-JCG, 2016 WL 4250431, at *4 (S.D. Miss. Aug. 11, 2016) (quoting *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986)).  When subjected even to minimal scrutiny, however, the Complaint's house of cards begins to tumble.

Indeed, approximately half of the alleged unfair and deceptive practices are disclosure-

---

[1] Unless otherwise noted, defined terms shall have the meaning ascribed thereto in Credit Acceptance's Memorandum of Law in Support of its Motion to Dismiss (ECF No. 11, "Opening Brief" or "Br."). Plaintiff's Memorandum of Law in Opposition to Credit Acceptance's Motion to Dismiss (ECF No. 21) is referred to herein as the "Opposition" or "Opp."

03402258

based claims without basis in any of the governing statutes and regulations, including TILA, Regulation Z and the MVSFL. Mississippi courts have rejected claims under the MCPA based on alleged failures to disclose information when such disclosure is not affirmatively required by law. Five others relate to alleged misstatements that have no capacity or tendency to deceive consumers. For example, the Complaint and the Opposition mention Credit Acceptance's decades-old slogan, "We change lives!," no less than six times each to somehow highlight the Company's alleged "deception." It belies sense, however, that this slogan—inactionable trade puffery under any definition of the term—could deceive consumers into obtaining credit they otherwise would not have wanted. When the Complaint is stripped of these deficient allegations, hyperbole and conclusory gloss, what remains is an improper attempt to hold Credit Acceptance vicariously liable for a host of alleged Dealer misconduct, and to penalize Credit Acceptance for its willingness to accept assignment of Contracts involving consumers "with impaired or limited credit histories" and for its use of lawful means to collect amounts concededly owed on such Contracts. This is so notwithstanding the Complaint's failure to allege a violation of any of the detailed statutes and regulations that govern the Company's conduct. The Complaint's attempt to impose additional regulatory requirements on indirect finance companies should be dismissed.

## ARGUMENT

### I. THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE MCPA CLAIM

The Opposition reflects a fundamental misunderstanding of Credit Acceptance's argument about the scope of the Attorney General's authority under the MCPA. Credit Acceptance does not contend that it is immune from suit under the MCPA because "it is already regulated by other laws." (Opp. 8.) Rather, the Attorney General cannot use the MCPA to rewrite the comprehensive fabric of existing laws governing every aspect of Credit Acceptance's business merely because he believes that changes should be made to the existing regulatory

regime.  (*See* Br. 8-12.)  If the MCPA could be used as the Attorney General suggests, companies operating in regulated industries would never have notice of what the law requires. Tellingly, the only authority mustered in the Opposition for the claimed authority to make lawful conduct unlawful through the filing of a complaint is *Massachusetts law*.  (*See* Opp. 13 (citing *Massachusetts v. Fremont Inv. & Loan*, 897 N.E.2d 548, 556 (Mass. 2008).)[2]

For this and numerous other reasons detailed below and in the Opening Brief, the Complaint should be dismissed as a matter of law for failure to state a plausible MCPA claim.[3]

### A.  The Complaint's Disclosure-Based Claims Must Fail

Some of the Complaint's most evident overreaching is its attempt to hold Credit Acceptance liable for failing to disclose information that none of the numerous governing laws require the Company to disclose.  (*See* Br. 10-12.)  To take just one example, the Complaint alleges that the MCPA (and not TILA, Regulation Z or the MVSFL) purportedly requires that the following disclosure be included in any Contract for which the Company accepts assignment (assuming solely for the sake of argument that the factual predicate underlying this allegation is true): "[Data redacted] Mississippi consumers who do business with Credit Acceptance end up delinquent or in default on their Credit Acceptance loans." (*See, e.g.*, Compl. ¶¶ 1, 86(b), 92(b).)

---

[2] Unlike the MCPA, the Massachusetts general consumer protection statute does not provide a list of trade practices deemed by the Massachusetts legislature to be properly within its statute's reach.  *Compare* Mass. Gen. Laws 93A § 2, *with* Miss. Stat. Ann. § 75-24-5.  The Opposition contains no response to the Complaint's failure to tie any of the alleged unfair and deceptive acts or practices to the trade practices specifically prohibited by the MCPA—a defect numerous courts have held fatal to Complaints asserting MCPA violations.  (*See* Br. 13 n.8 (collecting cases).)  And, seemingly ignoring the current posture of this action, the Opposition attempts to distinguish *Humphrey v. Citibank NA*, No. 2:12cv148M-V, 2013 WL 5407195 (N.D. Miss. Sept. 25, 2013)—the only Mississippi case cited by the parties for whether a loan constitutes a "good" or "service" for purposes of stating an MCPA claim—on the grounds that the court "merely held that the plaintiff '*ma[de] no allegation*' that a mortgage loan can constitute a 'good' or 'service' for purposes of Section 75-24-5(1) of the MCPA." (Opp. 17 (emphasis added).)

[3] Although fraud need not be *proven* to establish an MCPA claim (*see* Opp. 7-8), allegations of deceptive conduct still should satisfy the heightened pleading requirements of Rule 9(b).  *See Young v. Bristol-Myers Squibb Co.*, No. 4:16cv00108-DMB-JMV, 2017 WL 706320, at *15 (N.D. Miss. Feb. 22, 2017).

Mississippi courts repeatedly have rejected calls to impose disclosure requirements beyond those mandated by law. (*See* Br. 11-12 (collecting cases).) Indeed, in *Anderson*, a case that the Opposition does not attempt to distinguish, the court declined the plaintiffs' invitation to "don its legislative cap" and "require[e] additional disclosures regarding the details of financing transactions." *Anderson v. Gen. Motors Acceptance Corp.*, 476 F. Supp. 2d 624, 626 (N.D. Miss. 2007), *aff'd*, 269 F. App'x 452 (5th Cir. 2008). In an effort to save the Complaint's deficient disclosure claims, the Opposition asserts that TILA "recognizes that state law *may* require additional disclosures of information in connection with credit transactions so long as those requirements are not inconsistent with TILA." (Opp. 13 (emphasis added).) But even in the Opposition, the Attorney General fails to identify any such laws.[4]

The Opposition also misconstrues *Rawls v. Friedman's Inc.*, No. 4:02cv510LN, 2003 WL 21728838 (S.D. Miss. June 27, 2003), which is directly on point. There, the court held that the plaintiffs' disclosure-based claims, including those brought under the MCPA, had "no reasonable possibility of recovery" when "the information alleged to have been withheld from plaintiffs was either disclosed in the loan documents themselves, which were readily available to plaintiffs, or was not required to be disclosed." *Id.* at *2-3. The Opposition's failed attempt to distinguish *Rawls* only underscores that, absent "evidence of a fiduciary relationship" (not alleged here) (Opp. 14), disclosure-based claims must fail when disclosure is not required by law. And although *Davis v. General Motors Acceptance Corp.*, 406 F. Supp. 2d 698 (N.D. Miss. 2005), did not involve an MCPA claim, the Opposition concedes that the court rejected the plaintiffs' assertion that an indirect auto finance company had any obligation to disclose "certain itemized

---

[4] Insofar as the Complaint's allegations concerning the sufficiency of VSC disclosures are sufficiently pled (and they are not, *see* Compl. ¶ 52), these allegations should be directed to the providers of those VSCs, and not Credit Acceptance. (*See infra* § I(B); Br. 10 n.4.)

information related to the finance charge" when disclosure was not required by the MVSFL, TILA or Regulation Z.  (Opp. 14 (citing *Davis*, 406 F. Supp. 2d at 700)); *accord Byrd v. Paw Paw's Camper City, Inc.*, 967 So. 2d 1251, 1253-54 (Miss. Ct. App. 2007) (rejecting disclosure-based MCPA claim when disclosure was not required by applicable law).[5]

**B.     Credit Acceptance Cannot Be Held Vicariously Liable for Alleged Dealer Conduct**

Putting aside the Complaint's deficient disclosure-based allegations, the Opposition confirms that only a handful of the Complaint's alleged unfair or deceptive acts or practices can allegedly be attributed to the Company's conduct—as opposed to conduct of the Dealers.  (*See* Opp. 19-20.)  Among these allegations is the baseless notion that it is unlawful for Credit Acceptance to account for borrower risk in the terms of the Contracts for which it is willing to accept assignment, including by charging interest rates that the Complaint concedes are "allowed under Mississippi law."  (Compl. ¶ 80; *see id.* ¶ 54.)[6]  The Opposition also highlights the Complaint's meritless suggestion that the Company's collections practices—none of which are alleged to violate any existing statute or regulation—violate the MCPA merely because the

---

[5] *Holman v. Howard Wilson Chrysler Jeep, Inc.*, 972 So. 2d 564 (Miss. 2008) (cited at Opp. 14), is consistent with these authorities.  "Under Mississippi law, 'a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted.'  Such a duty 'generally arises *only where there is a fiduciary relationship between the parties*.'"  *Allstate Life Ins. Co. v. Parnell*, 292 F. App'x 264, 274-75 (5th Cir. 2008) (emphasis added) (quoting *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007)).  And although an omission can form the basis of a claim for deceptive trade practices, that is only the case if the omission is "material," *i.e.*, if it is "likely to affect the consumer's conduct or decision with regard to a product or service."  *In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 264 (1984).  The Complaint does not allege that any consumers would have acted differently upon receiving the information the Complaint alleges Credit Acceptance failed to disclose.

[6] For the reasons discussed in the Opening Brief, the Complaint's attempt to calculate finance charges in a manner that is contrary to TILA and Regulation Z is preempted.  (*See* Br. 10 n.5.)  And although the Opposition asserts that "charges not charged in a comparable cash transaction are considered a finance charge" under Regulation Z (Opp. 12 n.3), nowhere does the Complaint allege that VSCs or GAP coverage are not offered in cash transactions, that the optional nature of the VSCs and GAP coverage is not disclosed or that the cost of such ancillary products is systematically higher in credit transactions than it is in cash transactions.  Thus, the authority cited in the Opposition is inapposite.  (*See* Opp. 11-12.)

Attorney General finds them to be "aggressive." (Opp. 20; Compl. ¶ 58.)[7]

The Opposition attempts to bootstrap Dealer conduct to its limited Company-based allegations by asserting (for the first time) that "Credit Acceptance's model *requires* dealers" to engage in certain practices, and that "Credit Acceptance creates, directs, and *controls* every step of" the indirect finance process. (Opp. 19-20 (emphasis added).) Nowhere, though, does the Complaint allege that Credit Acceptance exercises control over Dealers. To the contrary, it alleges that the Company "encourages" and "incentivizes" certain Dealer conduct. (*See* Compl. ¶¶ 3, 25, 39-40, 44, 48, 66.) "[N]ew factual allegations presented in a plaintiff's opposition to a motion to dismiss . . . are insufficient to cure deficient allegations in a complaint." *Tanner v. Pfizer, Inc.*, No. 1:15cv75-HSO-JCG, 2015 WL 6133207, at *4 (S.D. Miss. Oct. 19, 2015) (citing *Estes v. JP Morgan Chase Bank, N.A.*, 613 F. App'x 277, 280 (5th Cir. 2015)). Without an agency relationship, the Complaint's Dealer-focused allegations must fail. (*See* Br. 16-17.)[8]

## C. The MCPA Cannot Be Used to Second-Guess Informed Consumer Choices

The Opposition's only response to Credit Acceptance's authority supporting that courts should not second-guess the wisdom of informed consumer decisions is to argue that consumer choices were not "informed" because (i) Credit Acceptance did not disclose to consumers the information itemized in the counts of the Complaint (none of which must be disclosed under the

---

[7] The FTC Act authority cited in the Opposition does not support the application of the MCPA to lawful debt collection activities deemed by the Attorney General to be generally "unfair." Rather, those cases at most support the application of the MCPA to alleged "*deceptive* representation[s] or *deceptive* means to collect or attempt to collect debts or to obtain information concerning debtors." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173, 1175 (11th Cir. 1985) (emphasis added) (citation omitted) (cited at Opp. 18) (false threats "to take legal action in the immediate or near future"); *see also Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 214 (9th Cir. 1979) (cited at Opp. 18) (false representation that unpaid debts would be referred to a lawyer for immediate legal action). Thus, at a minimum, Count II should be dismissed with respect to the allegations in paragraphs 92(s)-(x). (*See also* Br. 15 (collecting cases).)

[8] For this reason, the Opposition's attempt to equate "indirect" financing with conduct that "'indirectly' affects Mississippi consumers" (Opp. 20) should be rejected: the alleged unfair acts or practices that form the basis for an MCPA claim must be attributable to the defendant.

controlling state and federal regime, *see supra* § I(A)), and (ii) because Credit Acceptance uses the trade slogan, "We change lives!," and markets that it will "approve every customer." (Opp. 23.) This argument should be rejected as a matter of law.

As discussed above and in the Opening Brief, the Complaint does not—and could not—allege that consumers did not receive all of the information that the Mississippi Legislature and United States Congress have deemed necessary to make a free and informed choice concerning the terms of the Contracts they enter with Dealers. (*See supra* § I(A); Br. 18-20.) Indeed, the Complaint contains no allegation that the actual terms and conditions or any material limitations of the Contracts were not disclosed to consumers. And, contrary to the inapposite out-of-state cases cited in the Opposition (Opp. 10 n.24), *Mississippi law* does not impose a duty on finance companies to determine the suitability of a financial product for a consumer, and an alleged failure to do so is neither unfair nor deceptive. *See, e.g.*, *Allstate*, 292 F. App'x at 275 (affirming dismissal of MCPA claim based on allegations that Allstate "fail[e]d to discuss the possible negative consequences" an annuity could have for plaintiff when plaintiff "identifie[d] no Mississippi law that would have imposed a duty on Allstate's agents to conduct such discussions," and there was no evidence that "Allstate's agents lured or pushed [plaintiff] to purchase the annuity, but only that they offered it as a possibility and he decided to purchase it").

The Opposition's suggestion that consumers cannot assess the condition of the cars they purchase or whether the price of those cars is too high (*see* Opp. 23) is both patronizing and contrary to common sense. More important, though, it is contrary to Mississippi law and belied by the allegations in the Complaint. *See Anderson*, 476 F. Supp. 2d at 627 ("[I]t is . . . clear that consumers can and do ascertain for themselves whether a particular quoted price or interest rate is as advantageous as a salesman represents . . . ."); (Compl. ¶ 33 (consumers do not "respond . . .

03402258                                    7

well" to high sale prices)).[9]  Moreover, under Mississippi law, *all* borrowers have a "duty to read and understand any document [they] sign[] because, '[i]n Mississippi, a person is charged with knowing the contents of any documents that [he or she] executes.'"  *United Credit Corp. v. Hubbard*, 905 So. 2d 1176, 1178 (Miss. 2004) (third alteration in original) (citation omitted).  The Attorney General's conclusion that, with hindsight, certain consumers would be better off if they never agreed to purchase a vehicle on credit "does not translate into a legally cognizable claim."  *Rooster's Grill, Inc. v. Peoples Bank*, 965 F. Supp. 2d 770, 775 (S.D. Miss. 2013).

The Opposition argues that Credit Acceptance's alleged misrepresentations somehow create an exception to the above-described principles of Mississippi law.[10]  (*See* Opp. 23.)  But the alleged misrepresentations have no "capacity or tendency to deceive."  (Opp. 21.)  Indeed, contrary to the Opposition's assertion, a trial is not needed to conclude that the Company's slogan, "We change lives!," is quintessential inactionable trade puffery as a matter of law:

> "[T]here are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity."  Think, for example, Disneyland's claim to be "The Happiest Place on Earth."  Of Avis's boast, "We Just Try Harder."  Or Dunkin Donuts's assertion that "America runs on Dunkin." . . . These boasts and others like them are widely regarded as "puff"—big claims with little substance.

*Carvelli v. Ocwen Fin. Corp.*, __ F.3d __, 2019 WL 3819305, at *5 (11th Cir. Aug. 15, 2019) (quoting *Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918) (Hand, J.)); *see also Richardson v. Allstate Indem. Co.*, Civ. No. 07-5066, 2009 WL 10680780, at *2-3 (E.D. La. Apr. 3, 2009) (Allstate's "You're in good hands" slogan is inactionable as a matter of law).

---

[9] For this reason, Credit Acceptance's statements on its website that accurately describe the indirect financing process have no "capacity or tendency to deceive."  (Opp. 21-22.)

[10] Seemingly brushing over nearly 20 pages of the Opening Brief, the Opposition incredulously asserts that Credit Acceptance "takes issue with [only] three of the alleged [deceptive] practices" in the Complaint.  (Opp. 20.)  The Opening Brief explains in detail why none of the allegations in the Complaint are sufficient to plausibly state a claim under the MCPA as a matter of law.

Nor can the Opposition contort the plain language of Credit Acceptance's repossession disclosure to say something that it does not. (*See* Opp. 22.) Nowhere does the disclosure state (or even imply) that Credit Acceptance will *only* repossess a vehicle from a consumer's home or where a consumer's car is stored. (*Cf. id.*) To the contrary, the Contract unequivocally states that Credit Acceptance "*can*" repossess a car from those locations and, if it chooses to do so, it will do so "peacefully" and in accordance with the law.

D.     **The Complaint Does Not Plead Violations of Other Laws**

In a last ditch effort to save the Complaint, the Opposition asserts that, in any event, the "[f]ailure to comply with the standards set forth in [TILA, Regulation Z and the FDCPA] have [sic] been found to violate Section 5 of the FTC Act" (and thus the MCPA). (Opp. 10.) It also argues that "nothing in the MCPA prohibits the Court from looking to violations of the [MVSFL] . . . as guidance in assessing whether conduct is unfair or deceptive. (*Id.*) Notably absent from the *Complaint*, however, is any allegation that Credit Acceptance *has* violated TILA, Regulation Z, the FDCPA or the MVSFL, and any attempt to manufacture such allegations in the Opposition should be rejected.[11]  *See Tanner*, 2015 WL 6133207, at *4 (complaint defects cannot be cured in opposition brief).

---

[11] Contrary to the Opposition's misleading citations, the Complaint does *not* "allege[] that Credit Acceptance fails to disclose the cash sale price of its vehicles." (Opp. 11; *see* Compl. ¶ 54 (alleging that CAC loans have high interest rates); *id.* ¶ 86(f) (alleging that Credit Acceptance "[f]ail[s] to disclose to Mississippi consumers significant sale price markups on their cars"); *id.* ¶¶ 86(g), 92(h) (alleging that "Mississippi consumers with the poorest credit" are steered "to the cheapest, lowest quality cars with the highest relative sale price markups"); *id.* ¶ 92(j) (alleging that Credit Acceptance "[o]bscures from Mississippi consumers their cars' actual values").) While the Opposition asserts that paragraph 54 "defin[es] sale price markup as [the] difference between the sale price paid by a cash or prime credit buyer (the fair market value) [and] the sale price paid by a subprime buyer" (Opp. 11), the Complaint specifically defines "sale price markup" elsewhere as the difference between the Dealer wholesale average value and the sale price. (*See* Compl. ¶¶ 29-35.) In addition, unlike in *Berryhill v. Rich Plan of Pensacola*, 578 F.2d 1092 (5th Cir. 1978) (cited at Opp. 12), the Complaint does not allege that Credit Acceptance makes inclusion of VSCs or GAP coverage a "condition" of financing. *Id.* at 1098. Rather,
*(cont'd)*

## II. THE REQUESTED INJUNCTION IS IMPROPER

Confirming the impropriety of the relief sought in the Complaint, the Opposition asserts that the Complaint "seeks to enjoin Credit Acceptance <u>from engaging in lending and collections practices that violate the MCPA</u>, including," *but not limited to*, "the unfair and deceptive trade practices recited" in the Complaint.  (Opp. 25 (emphasis added).)  While the MCPA authorizes the Attorney General to bring an action to restrain *particular* "method[s], act[s] or practice[s] prohibited by Section 75-24-5," it does not authorize the Attorney General to seek a general injunction against "violat[ions] [of] the MCPA." (Opp. 25).  Tellingly, the Opposition cites no authority supporting the overbroad injunction sought in the Complaint.  Nor does it make any attempt to distinguish the numerous binding cases cited in the Opening Brief—all of which hold that an injunction to "obey the law" is impermissible.  (*See* Br. 22-24 (collecting cases).)  Indeed, the impropriety of the injunction sought only emphasizes the impropriety of the claims in the Complaint:  if the Complaint sought to curb a particular act or practice, rather than attack the entirety of a lawful and highly-regulated industry, the requested injunction might be permissible.  However, it does not, and the Complaint's prayer for an injunction thus should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

DATED:  September 16, 2019

Respectfully submitted,

**CREDIT ACCEPTANCE CORPORATION**

By:  */s/ R. David Kaufman*
R. David Kaufman
One of Its Attorneys

---

*(cont'd from previous page)*
the Complaint alleges that "*Dealers* have great *incentives* to sell" ancillary products.  (Comp. ¶ 40 (emphasis added).)

OF COUNSEL:

| | |
|---|---|
| **BRUNINI, GRANTHAM,**<br> **GROWER & HEWES, PLLC** | **SKADDEN, ARPS, SLATE,**<br> **MEAGHER & FLOM LLP** |
| R. David Kaufman (MS Bar No. 3526)<br>M. Patrick McDowell (MS Bar No. 9746)<br>Cody C. Bailey (MS Bar No. 103718)<br>The Pinnacle Building, Suite 100<br>190 East Capitol Street (39201)<br>Post Office Drawer 119<br>Jackson, MS  39205<br>Telephone:  (601) 948-3101<br>Facsimile:  (601) 960-6902<br>(dkaufman@brunini.com)<br>(pmcdowell@bruninni.com)<br>(cbailey@brunini.com) | Jonathan Frank (*pro hac vice*)<br>Patrick G. Rideout (*pro hac vice*)<br>Four Times Square<br>New York, NY  10036<br>Telephone:  (212) 735-3000<br>Facsimile:  (212) 735-2000<br>(jonathan.frank@skadden.com)<br>(patrick.rideout@skadden.com)<br><br>Anand S. Raman (*pro hac vice*)<br>Darren M. Welch (*pro hac vice*)<br>1440 New York Avenue, N.W.<br>Washington, D.C.  20005<br>Telephone:  (202) 371-7000<br>Facsimile:  (202) 393-5760<br>(anand.raman@skadden.com)<br>(darren.welch@skadden.com) |

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                     */s/ R. David Kaufman*
                                                   R. David Kaufman, MS Bar No. 3526